**SO ORDERED.**

**SIGNED this 20 day of May, 2009.**

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA

IN RE:

MONICA M. WITT,
           Debtor.                             Case No. 08-05397-8-JRL


MONICA M. WITT and ISLAND LAND       Adversary Proceeding No.:
COMPANY, LLC                           09-00061-8-JRL
           Plaintiffs,


v.

MICHAEL P. NOLAN, MICHAEL B.
BURNETTE, GEORGE E. GOODRICH,
MBB, INC., and BERKLEY CLUB, LLC.,
           Defendants.

_____

## ORDER

      This case is before the court on the motion to dismiss the complaint of plaintiffs Monica M.

Witt and Island Land Company, LLC, by Michael B. Burnette, and the emergency motion to dismiss

and set aside lis pendens, by Michael P. Nolan, George E. Goodrich, and Berkley Club, LLC.  On

May 5, 2009, the court conducted a hearing on this matter in New Bern, North Carolina.  This order

confirms and provides the rationale for the oral ruling at the conclusion of the hearing allowing the

motion to dismiss the complaint and denying the motion to dismiss and set aside lis pendens.

## **BACKGROUND**

In 2003, plaintiff Monica M. Witt ("Witt") contracted to purchase a tract of land in excess of three acres, located on Ocracoke Island, with a large historical structure thereon known as the Berkley Manor (the "Berkley Property") for a purchase price of $3,250,000.00. Subsequently, on August 6, 2003, defendant Michael P. Nolan ("Nolan") and Witt formed Island Land Company, LLC ("Island Land Company") for the purpose of buying the Berkley Property. Thereafter, Witt assigned the purchase contract to Island Land Company and put up approximately $200,000.00 toward the purchase price of the Berkley Property. In addition, a promissory note from Island Land Company in the amount of $282,129.61 was executed in favor of Nolan for his expenditures in excess of Witt's contribution. The balance was financed by Southern Bank and closing occurred in November 2003. In April 2005, Island Land Company refinanced the Berkley Property through First South Bank, obtaining a future advance acquisition and development loan in the amount of $3,550,000.00. Witt and Nolan personally guaranteed this debt.

In May 2006, Island Land Company executed a contract to sell the Berkley Property to a conservation group for approximately $6,700,000.00. Closing was scheduled to occur in February 2007. After the agreement to sell the Berkley Property was reached, First South Bank advanced cash in the sum of $500,000.00 to Island Land Company. Of this advanced sum, more than $400,000.00 was earmarked to cover the monthly mortgage payments on the Berkley Property until closing. The mortgage payments were auto-drafted by First South Bank directly from an Island Land Company account.

By the end of 2006, the relationship between Witt and Nolan had deteriorated and Witt began

questioning Nolan's conduct regarding the affairs of Island Land Company. Witt suspected that Nolan was moving the funds reserved for making mortgage payments from the Island Land Company bank account to his personal bank account without her knowledge or consent. Thereafter, Nolan required that Witt pay one-half of the monthly mortgage payments from her personal funds. Meanwhile, Nolan continued to use Island Land Company funds to cover the other half of payments to First South Bank.

In early 2007, the manager of the conservation group informed Nolan that he was unable to meet the February 2007 closing date. As a result, Nolan terminated the purchase contract with the conservation group without the consent of Witt. Subsequently, Island Land Company entered into a contract to sell the Berkley Property to MBB, Inc. for $5,300,000.00. A purchase agreement was signed on March 7, 2007 by Michael B. Burnette ("Burnette"), on behalf of MBB, Inc., and Nolan, on behalf of Island Land Company (the "Purchase Agreement"). Witt was informed by the attorney for Island Land Company that the conservation group contract was no longer an option and that her failure to sign the Purchase Agreement would result in foreclosure by First South Bank. As a result, Witt signed the Purchase Agreement on March 9, 2007. The Purchase Agreement provided for a closing date of May 23, 2007. Subsequently, on June 7, 2007, Nolan formed Berkley Club, LLC ("Berkley Club"). After Berkley Club was formed, MBB, Inc. allegedly assigned the Purchase Agreement to Berkley Club.

Between May and October of 2007, Witt made several unsuccessful demands upon the buyer to close as required in the Purchase Agreement. In response, the attorney for MBB, Inc., Burnette, Berkley Club, and Nolan represented to Witt that the buyer needed additional time to obtain appraisals. However, by August 2007, Witt was no longer able to make one half of the mortgage

payments on the Berkley Property. As a result, First South Bank instituted foreclosure proceedings on October 4, 2007. In January 2008, Berkley Club purchased the Berkley Property at foreclosure for approximately $3,675,000.00. The deed to Berkley Club was dated January 17, 2008 and recorded in Book 230, Page 732 of the Hyde County Public Registry. Proceeds from the sale were used to pay off the secured obligation of Island Land Company to First South Bank as well as two junior claims of lien on the Berkley Property. In addition, a check for surplus sale proceeds in the amount of $244,323.25 was paid to Nolan.

On or about March 6, 2009, Witt and Island Land Company filed a Notice of Lis Pendens with the Clerk of Superior Court of Hyde County, North Carolina as to the Berkley Property. On March 9, 2009, Witt and Island Land Company (together, the "Plaintiffs") filed a complaint in bankruptcy court (the "Complaint") against Nolan, Burnette, George E. Goodrich ("Goodrich"), MBB, Inc., and Berkley Club (collectively, the "Defendants"). In the Complaint, the Plaintiffs asserted claims against Nolan for breach of fiduciary duty, fraudulent misappropriation of funds, and unjust enrichment. Further, the Plaintiffs asserted claims for relief against Berkley Club for breach of contract, injunctive relief, imposition of a constructive trust, and unjust enrichment. In addition, the Plaintiffs sought relief against Goodrich, the co-owner of Berkley Club, for unjust enrichment. As against MBB Inc., the Complaint alleged claims for relief for breach of contract and intentional, willful, and wanton misconduct. Finally, the Plaintiffs alleged unfair and deceptive trade practices against all of the Defendants. On April 17, 2009, Berkley Club, Goodrich, Nolan, and MBB Inc. filed answers to the Complaint. In addition, Burnette filed a motion to dismiss the Complaint. Also on April 17, 2009, Nolan, Goodrich, and Berkley Club filed an emergency motion to dismiss and set aside lis pendens.

Before the court are Burnette's motion to dismiss the Complaint and Nolan, Goodrich, and Berkley Club's motion to dismiss and set aside lis pendens.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), made applicable by Bankruptcy Rule 7012(b)(6), a complaint should be dismissed for failure to state a claim upon which relief can be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).  In determining whether the plaintiff has failed to state a claim upon which relief can be granted, the court must accept as true all pleaded allegations and view the complaint in the light most favorable to the plaintiffs.  Hatfill v. The New York Times Co., 416 F.3d 320, 329 (4th Cir. 2005).

## ANALYSIS

1.  Motion to Dismiss by Burnette

Burnette moves to dismiss the Complaint pursuant to Rule 12(b)(6) on the basis that it fails to state a claim upon which relief can be granted.  In support of his motion to dismiss, Burnette argues that the Complaint fails to allege a recognizable claim against him individually and that any allegations against him were made in his capacity as an owner and officer of MBB, Inc.

In response, the Plaintiffs contend that Burnette acted in his individual capacity in conspiring with Nolan to deprive the Plaintiffs of an economic opportunity and obtain the Berkley Property at foreclosure.  Specifically, the Plaintiffs allege in the complaint that Burnette "teamed up" with Nolan to acquire the Berkley Property and "conspired to obtain a release from

5

Witt in favor of Nolan." Complaint, p. 4, para. 20. As a result of his actions, the Plaintiffs contend that Burnette breached the contract to purchase the Berkley Property and committed an unfair and deceptive trade practice in violation of Chapter 75 of the North Carolina General Statutes.

The court finds that the factual allegations in the Complaint are sufficient to support causes of action against Burnette in his capacity as owner and officer of MBB, Inc. However, nowhere in the complaint do the Plaintiffs assert a claim for relief against Burnette in his individual capacity or seek to pierce the corporate veil of MBB, Inc. First, the Complaint fails to show that Burnette was a party to a contract with the Plaintiffs in his individual capacity. Rather, the only documents attached to the Complaint which support a claim for breach of contract against Burnette are two agreements to purchase the Berkley Property, both of which were signed by Burnette in his capacity as owner and officer of MBB, Inc. Second, the court finds that the facts as alleged show that Burnette was acting on behalf of MBB, Inc. when he failed to honor the terms of the Purchase Agreement and allegedly conspired with Nolan to deprive the Plaintiffs of an economic opportunity. It follows that the allegations in the complaint support claims for relief against Burnette only in his capacity as owner and officer of MBB, Inc. Therefore, the complaint is dismissed as to Burnette individually.

2. Motion to Dismiss and Set Aside Lis Pendens by Nolan, Goodrich, and Berkley Club

Nolan, Goodrich, and Berkley Club move to dismiss and set aside lis pendens filed by the Plaintiffs on the basis that the Plaintiffs' allegations do not affect title to the Berkley Property. Under North Carolina law, a person desiring the benefit of constructive notice of pending litigation must file a notice of lis pendens in the following cases:

(1) Actions affecting title to real property;

(2) Actions to foreclose any mortgage or deed of trust or to enforce any lien on real property; and

(3) Actions in which any order of attachment is issued and real property is attached.

N.C. GEN. STAT. § 1-116(a) (2007).  The court in which the action was commenced may order the notice of lis pendens to be cancelled of record upon application of an aggrieved person and a showing of good cause.  N.C. GEN. STAT. § 1-120 (2007).  "If neither a foreclosure nor an attachment order are involved, a lis pendens may be filed only where a legitimate interest in real property may lie."  Zinn v. Walker, 87 N.C. App. 325, 336, 361 S.E.2d 314, 321 (1987).

The North Carolina Court of Appeals has held that lis pendens is proper where a plaintiff: (1) can trace his funds into the property; and (2) alleges either an express or implied trust.  Cap Care Group, Inc. v. McDonald, 149 N.C. App. 817, 824, 561 S.E.2d 578, 583 (2002) (citing Pegram v. Tomrich Corp., 4 N.C. App. 413, 166 S.E.2d 849 (1969)) ("Cap Care").  A constructive trust "arises when one obtains the legal title to property in violation of a duty he or she owes to another." Day v. Rasmussen, 177 N.C. App. 759, 762, 629 S.E.2d 912, 914 (2006) (quoting Fulp v. Fulp, 264 N.C. 20, 22, 140 S.E.2d 708, 711 (1965)). "Courts of equity will impose a constructive trust to prevent the unjust enrichment of the holder of the legal title to property acquired through a breach of duty, fraud, or other circumstances which make it inequitable for him to retain it against the claim of the beneficiary of the constructive trust." Sara Lee Corp. v. Carter, 351 N.C. 27, 35, 519 S.E.2d 308, 313 (1999) (quoting Cline v. Cline, 297 N.C. 336, 343-44, 255 S.E.2d 399, 404 (1979)).  A claim for a constructive trust will be sufficient to withstand a motion to dismiss "by alleging that a fiduciary relationship existed, that

7

a fiduciary duty was breached, and that defendants gained because of that breach . . . ." <u>Booher v. Frue</u>, 86 N.C. App. 390, 395, 358 S.E.2d 127, 130 (1987), <u>judgment aff'd</u>, 321 N.C. 590, 364 S.E.2d 141 (1988).

      In <u>Cap Care</u>, the North Carolina Court of Appeals found that lis pendens was proper where the plaintiffs traced their funds to the property at issue and alleged adequate grounds for the creation of a constructive trust.  <u>Cap Care</u>, 149 N.C. App. at 824, 561 S.E.2d at 583.  The plaintiff in <u>Cap Care</u> entered into a partnership arrangement with the individual defendant for the joint purchase and development of real property.  <u>Id.</u> at 820, 561 S.E.2d at 580-81.  Subsequently, the plaintiff wrote checks to the individual defendant in the total sum of one-half of the required earnest money deposit on the property.  <u>Id.</u> at 820, 561 S.E.2d at 581.  The individual defendant signed the sales contract and deposited the checks in his account.  <u>Id.</u>  However, the defendants financed the sale, closed on the property, and deeded the property to the corporate defendant without informing the plaintiffs.  <u>Id.</u> at 821, 561 S.E.2d at 581.  Thereafter, the plaintiffs demanded that the defendants contribute the property to the partnership but the defendants refused.  <u>Id.</u>  As a result, the plaintiffs filed a complaint alleging breach of contract, misappropriation of partnership assets, participation in unfair and deceptive trade practices, and wrongful conversion of the partnership's contract rights to purchase the property. <u>Id.</u>  The plaintiffs further requested that the property be held in a constructive trust.  <u>Id.</u>  At the conclusion of trial, the trial court ordered the plaintiffs to recover from defendants for breach of contract.  On appeal, the court of appeals found that the trial court did not err in maintaining notice of lis pendens on the property because the plaintiffs' money was used as part of the payment to purchase the property and their allegations for a constructive trust were adequate.  <u>Id.</u>

at 824, 561 S.E.2d at 583.

The facts in Cap Care are comparable to the factual allegations in the Complaint.  Similar to the partnership between the plaintiff and defendant in Cap Care, Witt formed a limited liability company with Nolan for the purpose of jointly investing in the Berkley Property.  Like the plaintiff in Cap Care, Witt contributed personal funds toward the purchase of the property. Just as the individual defendant in Cap Care breached his partnership agreement by causing property that was to be purchased by the partnership to be deeded to a corporation he owned, Nolan allegedly breached his fiduciary duty to Witt by transferring Island Land Company funds to his personal account, causing the Purchase Agreement to fail, and orchestrating the sale of the Berkley Property at foreclosure to a company he owned at a significantly reduced price.  Despite the fact that the Defendants had sufficient resources to close upon the Purchase Agreement, the Plaintiffs allege that Nolan intentionally delayed closing in order to force Witt to default on her mortgage obligations and cause First South Bank to foreclose on the property.  As a result, Berkley Club was able to purchase the Berkley Property at foreclosure for $3,675,000.00, which was a substantial discount from the contracted purchase price of $5,300,000.00.

The court finds that the notice of lis pendens was properly filed.  Based on the facts alleged in the Complaint, Witt furnished at least $200,000.00 toward the purchase of the Berkley Property by Island Land Company, an entity formed by Witt and Nolan for the purpose of jointly investing in and profiting from the Berkley Property.  The facts as alleged further show that Nolan transferred funds from Island Land Company's bank accounts to his personal account, interfered with agreements to sell the Berkley Property, and allowed First South Bank to foreclose on the Berkley Property in order to divest Witt of her interest in the property.  Because

9

the pleaded allegations show that personal funds of Witt in the amount of $200,000.00 can be traced to the Berkley Property, that Nolan transferred funds earmarked for the Island Land Company mortgage into his personal account prior to the foreclosure purchase of the Berkley Property by his new partnership, and that the movants obtained the Berkley Property as a result of a breach of a fiduciary duty by Nolan and fraudulent conduct, the court finds that the factual allegations in the Complaint are sufficient to leave the lis pendens in place.

Based on the foregoing, the motion to dismiss the complaint as to Burnette in his individual capacity is ALLOWED.  The motion to dismiss and set aside lis pendens is DENIED.

"END OF DOCUMENT"