**SO ORDERED.**

**SIGNED this 19 day of November, 2010.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

| | |
|---|---|
| IN RE: | |
| MONICA M. WITT, | CASE NUMBER: 08-05397-8-JRL |
|  | CHAPTER 11 |
| Debtor. | |

_____

| | |
|---|---|
| IN RE: | |
| MONICA M. WITT, | |
| Plaintiff, | |
|  | ADVERSARY PROCEEDING |
| v. | NO. L-09-00061-8-JRL |
| MICHAEL P. NOLAN, et al, | |
| Defendant(s). | |

_____

## ORDER

This matter came before the court on the motions for summary judgment of defendants George E. Goodrich and Michael P. Nolan. A hearing was held on November 9, 2010 in Raleigh, North Carolina.

**JURISDICTION AND PROCEDURE**

This court has jurisdiction over the parties and the subject matter of this proceeding

pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

## UNDISPUTED PERTINENT FACTS

1. In 2003, Monica Witt and Michael Nolan formed Island Land Co., LLC ("Island") as equal owners.  Island was formed for the sole purpose of purchasing three acres of property on Ocracoke Island with a historic building thereon known as Berkley Manor.  Purchase price for the property was $3,250,000.00.

2. During the years 2003 through 2007, Island attempted to develop and/or sell the subject property.  In March 2007, MBB, Inc., a company owned by Michael Burnette of Norfolk, Virginia, presented Island with a contract for purchase in the amount of $5,300,000.00.  On March 9, 2007, Witt signed the MBB contract, acknowledging that Nolan may have an interest in the purchasing entity.

3. On June 7, 2007, Articles of Organization for an entity known as Berkley Club were filed with the North Carolina Secretary of State.  No operating agreement was executed.  The filing was made by Robert Reed, Burnette's attorney, at Burnette's direction.

4. The MBB contract did not close.  By September 2007, Island was in default under the repayment obligations to First South Bank, the mortgagee of the property.  First South filed an action for foreclosure on October 4, 2007.  On October 16, 2007, Burnette executed an assignment of MBB's rights in the purchase agreement to Berkley Club.

5. In late December 2007, Nolan became the high bidder at foreclosure in the amount of

      $3,675,000.00.  Nolan assigned the bid to Berkley Club.

6.     In January 2008, George Goodrich and Nolan executed an operating agreement to acquire a half interest each in Berkley Club, LLC.  Burnette was no longer a member of the Berkley Club entity.

7.     Witt filed for relief under chapter 11 of the Bankruptcy Code on August 11, 2008.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).

## ANALYSIS

The plaintiff's amended complaint reads as a narration of facts.  Its recitation of legal allegations is less than a model of clarity.  After reviewing the record before the court, the claims asserted against Goodrich specifically derive from paragraph 64 of the amended complaint.  The

3

fair implication of paragraph 64 is that Goodrich conspired to deprive Witt of her interest in the Berkley Manor property.  Specifically, he is alleged to have tortiously interfered with the MBB contract with the intent to prevent closing, and  aided and abetted Nolan to breach his fiduciary duty to Island.  Regardless of which legal theory is relied upon, the evidence simply does not support a finding of wrongdoing.  What the evidence reveals is that Goodrich is a shrewd real estate investor.

Under North Carolina law, tortious interference with contract requires: (1) a valid contract between the plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party not to perform under the contract; (4) an absence of justification for such inducement; and (5) damages.  Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 351 (4th Cir. 1998);  United Laboratories, Inc. v. Kuykendall, 322 N.C. 643, 661, 370 S.E. 2d 375, 387 (1988); N.C. Elec. Membership Corp. v. Carolina Power & Light Co., 85 F.R.D. 249, 251 (D.C.N.C. 1979).  Prior to the events surrounding this adversary proceeding, Goodrich and Nolan were friends.  Affidavit of George Goodrich (October 11, 2010) ¶ 1.  In the summer of 2007, after MBB presented Island with the purchase contract, Nolan consulted Goodrich, an experienced real estate developer in the Outer Banks, seeking advise and expertise concerning the terms of the contract and prospective business plan.  Id. at ¶ 5.  These facts satisfy prong one and two of tortious interference; however, the remaining three factors are unsupported.

From all accounts, Burnette was a successful businessman with the capability of closing the MBB contract.  In anticipation of closing, Burnette formed the Berkley Club entity.  Through an assignment of the contract, Berkley Club was the intended purchaser of the property.

4

Affidavit of Michael Burnette (May 14, 2010) pg. 8, 9-11.  The contract did not close on May 23, 2007, and no financing was obtained.  Under the terms of the contract, after the date for loan commitment lapsed, Island could demand closing.  If after demand Berkley was still unable to close, Island could deem the contract terminated.  Plaintiff's Exhibit C.  The plaintiff did just this.  In a handwritten letter dated June 14, 2007, the plaintiff made a demand for closing and stated that "if it [the contract] does not close by June 23, 2007, I will not be willing to sell under the terms of that contract . . . After that [June 23, 2007] I consider the contract terminated . . . ."  Plaintiff's Exhibit 10.  Therefore, the plaintiff's allegation that Goodrich participated in Berkley Club in July 2007 and thereby prevented closing is irrelevant..  Goodrich states that his involvement with Berkley Club did not begin until January 2008; however, even assuming, arguendo, that Goodrich was "replacing" Burnette in the scheme as the plaintiff contends, by July the contract was by the plaintiff's own hand null and void.  One cannot induce non-compliance with a contract that is no longer enforceable.   Even if the contract was somehow resurrected when Witt's new counsel appeared in August, nonetheless there is no competent evidence that Goodrich had any role in its failure to close.

The court must now consider the plaintiff's second contention, that Goodrich aided and abetted Nolan.  The factors for finding that a defendant aided and abetted are: (1) the wrong alleged was committed by another; (2) the defendant knowingly advised, instigated, encouraged, procured, or aided the other person; and (3) the actions or statements of the defendant caused or contributed to the wrong.  See, State v. Baskin, 190 N.C. App. 102, 660 S.E. 2d 566 (N.C. App. 2008).  Here, the wrong alleged is a breach of fiduciary duty.  It is clear that Nolan's duty was to the company, not the plaintiff.  Kaplan v. OK Technologies, 196 N.C. App. 469, 657 S.E.2d

5

133(N.C. App. 2009)("The North Carolina Limited Liability Company Act does not create fiduciary duties amount members.") Both Witt and Nolan were sophisticated professionals who entered into the transaction with the knowledge and ability to protect their respective interests. Although the issue of Nolan's breach of fiduciary duty is reserved for trial, nevertheless, the claim against Goodrich for aiding and abetting fails on the second and third factors.

Much is made by the plaintiff about the email which was forwarded to Goodrich from Nolan. The correspondence originated as a follow-up to conversations between the plaintiff's attorney and Nolan's attorney. In the original email, Nolan's attorney stated that the plaintiff would no longer make payments on the note securing the Berkley Manor property. Plaintiff's Exhibit 11. It is the plaintiff's contention that the forwarded email corroborates collusion between the defendants. Goodrich acknowledges that the e-mail alerted him to the potential of foreclosure; however, "having received it, [I] did not seriously believe that Witt would risk her investment by allowing the property to be foreclosed." Goodrich, Affidavit, supra, at ¶¶ 13-16. Knowing of a distressed property is not the same as causing a foreclosure.

In September 2007, before the foreclosure commenced, Goodrich did allow Nolan to submit his financial statement to certain lenders. The permission to investigate financing was not a firm commitment to purchase the Berkley Manor property. Goodrich, Affidavit, supra, at ¶¶ 20-21. Taking a wait-and-see approach, Goodrich made clear that "if the property was foreclosed, the price was right, and if other conditions such as good title and availability of financing were met, then and only then I might be interested in participating in a purchase." Id. Goodrich remained noncommittal until January 2008, when the upset bid period expired and Nolan was the high bidder at foreclosure. Such a tentative stance can hardly be classified as

instigation or encouragement; nor in this instance can submitting financial paperwork to lenders be construed as conspiracy.  Individuals contemplating the purchase of real estate, especially through foreclosure, cannot wait until the eleventh hour to secure a commitment letter.

The decision to take title under the name Berkley Club, LLC, the same entity Burnette organized, is at first blush suspect. However, although the filed Articles of Incorporation reserved the name Berkley Club, LLC, no managers or members were named, no operating agreement issued, no tax id number requested or issued , and no other corporate formalities undertaken.  Goodrich, Affidavit, supra, at ¶ 27.  In Goodrich's words, before January 2008, the Berkley Club was just "on the shelf." Id. With Burnette's permission, the first and only operating agreement for Berkley Club was executed naming Nolan and Goodrich as Berkley Club's only members. Id. at ¶ 28.

What remains at issue without sufficient explanation is the assignment of the MBB contract to Berkley Club on October 16, 2007.  This assignment was undertaken shortly after the commencement of the foreclosure action.  Nolan asserts he was unaware of the assignment, as does Goodrich.  At this time, the court is unable to determine whether the assignment was an attempt by Burnette to further insulate himself from personal liability, or whether Burnette's motivation was questionable.  Regardless, this action cannot be attributed to Goodrich, who did not become involved in the purchase of the property until January 2008.

The court finds that Goodrich, like many discriminating real estate developers, monitored and investigated a potentially good investment.  Goodrich undertook the due diligence required before making a substantial purchase, and did not commit to buy the property until January 2008.  Sheer knowledge of imminent foreclosure does not by itself establish a conspiracy to deprive the

7

plaintiff of her interest in the property.  Moreover, Goodrich believed the plaintiff would find the means to prevent foreclosure; or in the alternative, do just as Nolan and bid at foreclosure. After making a demand for closing upon the original contract, the plaintiff said she considered the contract terminated.  Goodrich had no part in failure of the MBB contract.  Acquiring property through foreclosure after the contract to purchase had fallen apart on its own terms and was considered by the parties to the contract terminated is not conspiracy.

Based on the foregoing, defendant Goodrich's motion for summary judgement is **GRANTED** on all counts.  Material issues of fact, however, remain as to Nolan's involvement. Therefore, defendant Nolan's motion for summary judgement is **DENIED** and the issues therein shall be reserved for trial.

**END OF DOCUMENT**